**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CRIM NO. 21-CR-128** |
| **SANDRA PARKER,** | ) | **Judge: Mehta** |
| | ) | |

**DEFENDANT SANDRA PARKER'S
MEMORANDUM IN AID OF SENTENCING**

COMES NOW Sandra Parker, by and through counsel, and submits

the following memorandum in aid of sentencing.

**Background**

On January 6, 2021, a joint session of Congress convened at the U.S.

Capitol. The purpose for the joint session was to certify the vote count of the

Electoral College of the 2020 presidential election. On that day, then-

President Donald Trump also held a "Stop the Steal" rally in Washington,

which encouraged participants to protest the certification of the 2020 election.

During the rally, President Trump encouraged individuals to go to the U.S.

Capitol to protest.

Defendant Sandra Parker, along with her husband Bennie Parker, neither

of whom are members of the Oath Keepers, had travelled to Washington with

1

Jessica Watkins and Donovan Crowell, who were both members of the Oath Keepers. After the rally, the Parkers travelled with other members of the Oath Keepers to the U.S. Capitol. Sandra Parker entered into the building with members of the Oath Keepers. However, it was not for purposes of stopping the electoral count, but rather to provide medical aid to individuals who were in the U.S. Capitol. Because of health issues, Bennie Parker remained outside and did not go into the U.S. Capitol.



*Figure 1: Sandra Parker in the U.S. Capitol rendering aid to   William Isaacs.*

During the trial, evidence was adduced showing that Sandra Parker was in the very back of the line of the Oath Keepers who entered the U.S. Capitol. After providing aid to William Isaacs (Figure 1), Sandra Parker left the U.S. Capitol shortly thereafter when Mr. Isaacs was being taken out with the assistance of other individuals.

On February 9, 2023, the trial by jury began against Sandra Parker and her five codefendants: Michael Greene, William Isaacs, Connie Meggs, Bennie Parker (Sandra Parker's husband), and Laura Steele. On March 21, 2023, the jury returned its verdict as to Sandra Parker. Ms. Parker was found guilty of the following charges under the Eighth Superseding Indictment: a) Count 1, 18 U.S.C. § 1512(k) - Conspiracy to Obstruct an Official Proceeding; b) Count 2, 18 U.S.C. § 1512(c)(2), 2 - Obstruction of an Official Proceeding and Aiding and Abetting; c) Count 3, 18 U.S.C. § 372 - Conspiracy to Prevent Members of Congress from Discharging their Duties; d) Count 4, 18 U.S.C. § 1362, 2 - Destruction of Government Property; e) Count 5, 18 U.S.C. § 1752 (a)(1) - Entering or Remaining on Restricted Building or Grounds; and f) Count 7, 18 U.S.C. § 231(a)(3), 2 - Obstructing Officers During a Civil Disorder.

# **ARGUMENT**

### **A.    Statutory Penalty**

Counts 1 and 2 carry a maximum sentence of twenty years of imprisonment and/or a $250,000 fine, Count 3 carries a maximum sentence of six years of imprisonment and/or a $250,000 fine. Count 4 carries a maximum sentence of ten years of imprisonment and/or a $250,000 fine, Count 5 carries a maximum sentence of one year of imprisonment and/or a $100,000 fine. Counts 6 carries a maximum sentence of five years of imprisonment and/or a $250,000 fine,

### **B. Sentencing Guideline Calculations and Departures**

Sandra Parker does not disagree with the criminal history calculation of Criminal History Score I made in the PSR. However, the defendant objects to several enhancements in the Presentence Report.

### 1.    USSG § 2J1.2(b)(1)(B) is not applicable.

With regard to the application of the enhancements under the sentencing guidelines, For USSG § 2J1.2(b)(1)(B), Sandra Parker adopts the arguments and objections made by co-counsel regarding the inapplicability of the eight (8) level enhancement in Defendant Connie Meggs Memorandum in Aid of Sentencing (Dkt. 1019). The argument, which also references the holding by Judge McFadden in

United States v. Seefried, 2022 U.S. Dist. LEXIS 196980, at *5 (D.D.C. Oct. 29, 2022), applies equally to Sandra Parker. Sandra Parker respectfully requests that the court make a similar finding in this matter and not allow for the eight (8) level enhancement via USSG § 2J1.2(b)(1)(B).

    2.  USSG § 2J1.2(b)(2) is not applicable.

Similarly, USSG § 2J1.2(b)(2) does not apply to Sandra Parker. The certification of the electoral college is not a proceeding which involves interference with the administration of justice. Accordingly, the three (3) level enhancement indicated in the PSR under USSG § 2J1.2(b)(2) should apply.

    3.  USSG § 2J1.2(b)(3) is not applicable.

As to the enhancement under USSG § 2J1.2(b)(3), it similarly should not apply to Sandra Parker. As the evidence bore out at trial, Sandra Parker was not involved in any communication regarding the scope, planning, or preparation of the actions by the Oath Keepers on January 6th. There was no evidence that suggested that Sandra Parker played any organizing role on that day or prior to that date. Indeed, according to the government's theory, the plan to go into the U.S. Capitol was one that occurred shortly before entering. In support of their theory, their key piece of evidence was a video shot from Sandra Parker's phone with the members several feet ahead of her. In fact, the video shows Sandra Parker carrying

on a separate casual conversation with another person in the crowd. Accordingly, while it is clear that she entered the Capitol with the group, there is no evidence that Sandra Parker heard of the plans that were made at that time.

    4.  USSG §3C1.1 is not applicable.

As to the enhancement pursuant to USSG §3C1.1, based upon obstruction of justice, that two (2) point enhancement should not apply either. The government based the theory on the fact that when FBI agents seized the phones from the Parkers' home, the texts were not on her phone. The simple fact is that Ms. Parker had lost her phone shortly after January 6th, and therefore the texts had not been intentionally deleted, but rather were "lost" when the phone was itself lost and was no longer with Sandra Parker. Furthermore, as the court may recall, there were some commentaries that were found on her computer and/or her iCloud account, but there was no affirmative evidence to show that Sandra Parker made any specific effort to obstruct justice. Furthermore, there is no outside evidence that suggests that Sandra Parker was part of any conversations that would suggest getting rid of evidence, as it was her husband Bennie Parker who was communicating with others relating to January 6th. Further, there is not any basis to suggest that any texts that were sent by Sandra Parker would have been evidence

of her involvement with the events of January 6th. Accordingly, the court should

deny the two (2) point enhancement under USSG §3C1.1

    5.  <u>USSG §5H1.1 allows a basis for departure.</u>

    Under §5H1.1, age can be a factor to allow for departure. That section states:

> Age (including youth) may be relevant in determining whether a
> departure is warranted, if considerations based on age, individually or
> in combination with other offender characteristics, are present to an
> unusual degree and distinguish the case from the typical cases covered
> by the guidelines. **Age may be a reason to depart downward in a
> case in which the defendant is elderly and infirm and where a
> form of punishment such as home confinement might be equally
> efficient as and less costly than incarceration**. Physical condition,
> which may be related to age, is addressed at §5H1.4 (Physical
> Condition, Including Drug or Alcohol Dependence or Abuse;
> Gambling Addiction). USSG §5H1.1 (emphasis added)

    As the court is aware, Sandra Parker is retired and is 64 years old. Her

husband, Bennie Parker, is ten years older than her. When combined with the

minimal role that Ms. Parker played on that day, which involved minimal physical

exertion – in good part because of her elderly husband as well, the court should use

Ms. Parker's age as a basis for a downward departure. While the age and medical

condition of Bennie Parker is not a basis for departure as to Sandra Parker, it is

relevant and will be addressed as part of the factors under 18 U.S.C. § 3553(a),

    **C.**    **Statutory Sentencing Factors**

    As this court knows, in <u>United States v. Booker</u>, 543 U.S. 220, 264 (2005),

the Supreme Court indicated that sentencing courts should "consult [the Sentencing]Guidelines and take them into account when sentencing." Booker further indicated that the purpose of the guidelines was to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'"*Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)).

Given the factors under 18 U.S.C. § 3553(a), this court should consider the following: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment,affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need for the sentence to avoid unwarranted disparities among defendants with similar records convicted of similar conduct. *See* 18 U.S.C. § 3553(a).

1.   **Nature and Circumstances of the Offenses**

Sandra Parker did indeed enter the U.S. Capitol on January 6th. However, it was never with the intention of causing any disturbance or interfering with the

8

certification of the election. While that may or may not have been the intention of other members of the Oath Keepers, that information was never communicated to Sandra Parker, who was not an Oath Keeper or involved with any plans or conversations on or prior to that date. She was not part of any conversations, either prior to or on January 6th, that indicated that her entry into the Capitol was for any purpose other than rendering aid to those who needed it. There is no evidence that she personally was involved in any cheering, chanting, assaulting law enforcement or destroying any property. The only evidence adduced at trial was that Sandra Parker provided aid to Oath Keeper William Isaacs.

### 2. Defendant's History and Characteristics

Ms. Parker is a 64-year-old retired woman who resides with her husband, Bennie Parker, and her adopted daughter, who is now in her second year at college. As will undoubtedly be covered in his Memorandum in Aid of Sentencing, Bennie Parker's physical health has considerably deteriorated and has considerable pain and mobility issues. As the court can see from Exhibit 1, attached hereto, and incorporated by reference herein (with particularly relevant portions highlighted), Mr. Parker currently needs to use a motorized scooter, and needs a walker and cane to get around the house. His physical condition is

so bad that he cannot use his left hand due to the pain. Sandra Parker needs to assist him with everyday activities, such as dressing and even administering Bennie Parker's insulin for his diabetes because he is unable to make a grip. Mr. Parker relies on Sandra Parker daily. Accordingly, Sandra Parker asks the court to take this into consideration when determining the sentence for Bennie and Sandra Parker collectively. Providing Sandra Parker with a prison sentence, which would necessarily keep her away from Mr. Parker, could end up being disastrous for the health of Bennie Parker.

Ms. Parker is a caring and giving individual who, like many others, was concerned about possible discrepancies in the 2020 election. However, the government has desperately tried to take certain things out of context to suggest that she was somehow advocating violence. For example, during the trial, the government tried to take her use of the word "fight" as some indication that she was seeking an improper means of challenging the election results. However, as those same pieces of evidence indicated, Ms. Parker's "fight" involved proper suggestions like writing your congressman and donating money. Nothing indicated that Sandra Parker had any violent intention either before, during or after January 6th. Any suggestion by the government to the contrary is contradicted by their own evidence.

Perhaps the best indication of Sandra Parker's character comes from the many letters provided by her friends and family members. Those letters are attached hereto as Exhibits 2 through 10 and incorporated by reference herein.

Exhibit 2: A letter from Deborah Herrick, a coworker who worked at University of Cincinnati Blue Ash with Sandra Parker for 20 years. Ms. Herrick served on multiple committees with Ms. Parker as well. She describes Ms. Parker as "helpful, well thought of and is a genuine person and friend." She explains that the Parkers are a wonderful family and parents to their daughter Katie.

Exhibit 3: A letter from Patricia Bowling, the wife of David Bowling, a cousin of Bennie Parker. She describes them as a "loving, caring, selfless, hard-working and passionate people." She explains that the Parkers are in a difficult situation because of the decline in Bennie Parker's health, as Mr. Parker has to rely on Ms. Parker for even simple tasks like walking around their home. She also mentions that the Parkers did go to Washington on January 6th, but it was not to cause trouble, and adds that "[t]hey love people, they love their country, they love to help."

Exhibit 4: A letter from Stephen and Kathleen Winch, with whom Stephen Winch was a coworker of Bennie Parker. They have known Bennie Parker for over 50 years and Sandra Parker who they have known for 15 years. The Winches have also occasionally socially interacted with them. They indicate that any actions "had good

intentions in what they thought would be a service to their country." The Winches believe that the Parkers were not "hostile, aggressive, or out of control" and "they do not believe they would intentionally inflict harm to person or property." The Winches ask for compassion on their behalf.

Exhibit 5: A letter from Kathy Schmadel, who is a good friend and knows Sandra Parker from working together at the University of Cincinnati. She describes Bennie and Sandra Parker as loving and nurturing parents to their adopted daughter, who is now "thriving" and in college. She explains that Sandra Parker became the Director of Institutional Research at the University of Cincinnati. She does mention that Sandra Parker's vulnerability is that Sandra Parker is too trusting of others. Ms. Schmadel requests from the court for Ms. Parker to provide leniency.

Exhibit 6: A letter from Deborah Miller, a coworker from the University of Cincinnati who has known Sandra Paker for over 20 years. She explains that the school engaged in a program to assist underserved populations and minorities based upon Sandra Parker's research. She describes Sandra Parker as a "God fearing woman who bases all of her decisions on biblical principles." Ms. Miller describes Sandra Parker as having a heart of gold and "a heart for God" and says that Sandra Parker, through her work, "has touched tens of thousands of lives."

Exhibit 7: A letter from Brenda Helton, a coworker at the University of

Cincinnati, who describes Sandra Parker's role as Director of Institutional Research, which involved conducting studies and research to improve student learning and college experience. She describes how Sandra Parker spends much of her time and resources helping others as well as rescuing, fostering, and adopting injured animals. Ms. Helton goes on to say that Sandra Parker donates food to local groups and fundraising events, as well as providing food to elderly neighbors. She states that Ms. Parker volunteers with the Miami Valley Communications Council as a photo editor. Ms. Helton asks for leniency for Sandra Parker, as "she has much to offer to a world in need of compassion, caring, and contribution."

Exhibit 8: A letter from Ted Sandlin, a friend of the Parkers for approximately 5 or 6 years. He indicates that the Parkers have become "like family" to him. He discusses Sandra Parker's willingness to prepare home-cooked meals for him and for a homeless gentleman who frequents Critters (a local tavern in the area that the Parkers frequent). He indicates that he feels he can go to them for help in any way, and requests leniency for them.

Exhibit 9: A letter from Angela Blair, a friend of five years. She describes Sandra Parker as intelligent, polite, and someone who carries themselves in a polite respectful manner. She also indicates that Sandra Parker is an amazing mother and friend, as well as an exceptional wife and caregiver for Bennie Parker. She also states

that Sandra Parker always has "presented herself with levelheadedness and grace."

Exhibit 10: A letter from Jan Tracy, Bennie Parker's cousin. She explains that the Parkers never had children of their home, so they adopted their daughter from China. She indicates that Sandra Parker cooks meals for the Masons and for the Miami Valley Communications Counsel. Ms. Tracy also says that Sandra Parker volunteers at a high school, where she also helps with bake sales. She also confirms that Bennie Parker's health has gone downhill in the last year and that Sandy takes him to doctor appointments, as Mr. Parker no longer drives.

### 3. Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public

Ms. Parker has always been a law-abiding citizen and had never been arrested prior to this case. As indicated previously, even despite her strong concerns and feelings about the election, she never at any time advocated violence. Instead, she is a believer in following the proper channels to let grievances be known.

Admittedly, the jury has found her guilty of the charges she was facing. However, as noted by the PSR writer, she is considered a minor participant under USSG §3B1.2(b). Her role and actions on January 6th were not one who was seeking to support any violation of the law. Her role for all intents and purposes

14

appears to be one of supporting others who apparently may have not had the best of intentions in mind.

Furthermore, she, and her husband Bennie Parker, for that matter, have been in full compliance with the conditions imposed by the court. She also was never a member of the Oath Keepers, so there is no indication, either explicitly or implicitly, that she agrees with the tenets, philosophy, and/or actions. Essentially, her only true "involvement" with the Oath Keepers was on January 6th in a minor assistance role. Accordingly, the court has no reason to think that Sandra Parker is a danger to the community and needs to be imprisoned for those purposes.

### 4. Need to Avoid Unwarranted Sentencing Disparities

The court undoubtedly wishes to avoid disparities between the defendants in the Oath Keeper trials I, II, and III. However, the defense respectfully suggests that based on evidence provided, Ms. Parker's actions should place her towards the bottom of sentences in this matter. Ms. Parker was not part of any communications or organization of this event. Her role, already determined by the PSR to be minor, consisted of a support role of assisting with medical help. Her entire involvement in the events of January 6th that are relevant are that she went into the Capitol at the back of the line of Oath Keepers, rendered medical assistance to an individual in the

Capitol, and left a few minutes later.[1]

For these many reasons described above, Ms. Parker would respectfully ask for a variant sentence of two months of home confinement and two years of probation on each sentence to run concurrently. This will be more than sufficient to justly punish Ms. Parker for her actions, while promoting respect for the law, affording adequate deterrence, and protecting the public.

WHEREFORE, for the reasons stated above, Defendant Sandra Parker respectfully requests a sentence as discussed.

Respectfully submitted,

SANDRA PARKER


  /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Sandra Parker
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com

---

1 Had Ms. Parker taken the stand, she would have testified that she rendered assistance to an unknown female once she was outside of the building when she left with the group assisting William Isaacs. A woman was having difficulty breathing, and she stayed with her until authorities came and helped her. Unfortunately, there apparently was no evidence of these actions, as they were outside of the Capitol, but it would have contradicted the government's argument at trial that she was only there to help the Oath Keepers, rather than rendering aid to anyone who needed it, as was the actual caser.

## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 22nd day of August, 2023, which will send a notification of such filing (NEF) to the following to all counsel of record.


    /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Sandra Parker
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com